

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,: <br> **Plaintiff,** <br> <br> v. <br> <br> STANLEY SANDERS <br> USM No. 60474-066 <br> FDC Philadelphia <br> P.O. Box 562 <br> Philadelphia, PA 19105 | CRIMINAL ACTION <br> <br> No. 06-173-1 |

**FILED**
JUL 14 2009
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM

GENE E.K. PRATTER, J.                                                                                   JULY 13, 2009

Following a jury trial, Mr. Sanders was convicted of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). This Court sentenced Mr. Sanders, and then, following a timely appeal,[1] re-sentenced him to 100 months' incarceration based on an agreed-upon error in the calculation of the appropriate Sentencing Guideline provisions. Mr. Sanders now has filed a motion to vacate, set aside or correct his new sentence under 28 U.S.C. § 2255, asserting that he was denied effective assistance of counsel because he asked his prior counsel to appeal his re-sentencing and his prior counsel failed to file a notice of appeal with the Third Circuit Court of Appeals. For the reasons that follow, the Court denies Mr. Sanders's motion.

I.      BACKGROUND

After Mr. Sanders's conviction for bank robbery, the Court initially sentenced Mr. Sanders to 115 months of imprisonment, which was in the middle of the advisory guideline range of 100 to 125 months. The sentence included a mandatory restitution obligation in the amount of $2,609 on a payment schedule, a mandatory special assessment of $200, and three

---

[1] As set forth in greater detail below, the appeal affirmed the conviction but vacated the sentence due to a calculation error that all parties agreed needed to be rectified.

years of supervised release. Mr. Sanders filed an appeal with the Third Circuit Court of Appeals, challenging 1) the Court's denial of his pretrial motion to suppress out-of-court identifications, 2) the Court's overruling of his objections to an allegedly prejudicial remark made by the prosecutor at the trial, and 3) the validity of his sentence in light of an improperly credited prior conviction. In the appeal, counsel for the United States agreed that a re-sentencing was necessary because of an inadvertent error that had escaped the notice of all parties, but argued against Mr. Sanders's other grounds. The Third Circuit Court of Appeals also agreed, finding that there was no prosecutorial misconduct and that the Court did not err in denying Mr. Sanders's motion to suppress. Accordingly, the Court of Appeals affirmed the conviction, vacated the sentence, and remanded only for the Court to re-sentence based upon the corrected guideline range. On remand, Mr. Sanders and the United States were in agreement on the proper re-calculated sentencing range, and no objections were made to the re-calculated sentencing range. At the re-sentencing hearing on May 28, 2008, the Court sentenced Mr. Sanders to 100 months of imprisonment, which was near the bottom of the agreed-upon re-sentencing Guideline range. Thereafter, Mr. Sanders did not file a timely notice of appeal with the Third Circuit Court of Appeals.

On January 16, 2009, Mr. Sanders filed a motion under 28 U.S.C. § 2255 asserting that he was denied effective assistance of counsel because he asked his prior counsel to appeal his re-sentencing, and his prior counsel failed to do so.[2] After receiving the response from the United

---

[2] At the July 1, 2009 hearing on the pending motion, Mr. Sanders brought up two additional mistakes that he thought had been made by counsel.

First, Mr. Sanders complained that counsel or the Federal Defenders' office mistakenly sent Mr. Sanders some legal mail in November of 2008 regarding an unrelated pedophile case, and this mistake caused a controversy at the prison and caused the people at the prison to think very badly of Mr. Sanders. July 1, 2009 Tr. at 49-51, 63-64. Mr. Sanders acknowledged that the issue has since been cleared up, July 1, 2009 Tr. at 50-51.

2

States, the Court held an evidentiary hearing on Mr. Sanders's motion on July 1, 2009. At this hearing, the Court received lengthy testimony from Mr. Sanders and his prior counsel, and both Mr. Sanders and counsel for the United States were permitted to question prior defense counsel.

II.  DISCUSSION

Federal prisoners have a statutory remedy at 28 U.S.C. § 2255 for challenging the lawfulness of their conviction. See United States v. Addonizio, 442 U.S. 178, 184 (1979). To qualify for a § 2255 remedy, "the alleged errors must raise a 'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (quoting Addonizio, 442 U.S. at 185) (citation omitted)). The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255; F.R.C.P. 4(b). A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)). "[W]hen a defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that the lawyer failed to

---

Second, Mr. Sanders suggested that his 100-month sentence should be thrown out because of "bogus information printed within the PSR," including information about his educational level, and he asserted that the correct information had not been brought to the Court's attention at the re-sentencing hearing on May 28, 2008. See July 1, 2009 Tr. at 29-33, 36. However, after being refreshed with portions of the re-sentencing hearing transcript, Mr. Sanders acknowledged that he had been mistaken and that the Court was indeed aware of the correct information regarding the PSR at the time of his re-sentencing, and that it was prior defense counsel who had made the Court so aware. See July 1, 2009 Tr. at 36, 53.
After reviewing the transcripts from the July 1, 2009 hearing, as well as the transcript from Mr. Sanders's re-sentencing hearing, the Court is satisfied that neither of these alleged mistakes warrants further discussion; and neither contributes to the Court's analysis here.

3

honor it." Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001). See also Booth, 432 F.3d at 546 (district court "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief.") (citing United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)).

Under the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984), a prisoner alleging ineffective assistance of counsel must show (1) that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the defendant was prejudiced by counsel's deficient performance. See Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006). For purposes of efficiency, economy and practical impact, the Court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006). To establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. The Supreme Court made clear that a presumption of prejudice applies in the context of an ineffectiveness claim because an attorney's deficient performance deprives the defendant of his or her opportunity for an appellate proceeding. See generally, id.

4

At the July 1, 2009 hearing on his 2255 motion, Mr. Sanders testified that he called counsel on the day after his re-sentencing, and left a voicemail saying that he "wanted to appeal the re-sentencing." See July 1, 2009 Tr. at 7. Mr. Sanders further stated that he would "follow-up with a letter and let [counsel] know" and "gave [counsel] that information, so he could act because I know from the time of the re-sentencing we only have ten days and I emphatically asked about that during the re-sentencing." See July 1, 2009 Tr. at 7. He stated that he called counsel again at some point in the following days, and left another voicemail. Over the course of these voicemails, Mr. Sanders estimates that he stated his desire to "appeal" the re-sentencing three or four times. See July 1, 2009 Tr. at 12-14.

The Court analyzed several pieces of correspondence in connection with Mr. Sanders's 2255 motion, three of which were discussed at length at the July 1, 2009 hearing.[3]

The first piece of correspondence[4] was a letter sent by Mr. Sanders to the Court dated May 31, 2008, in which he stated in part: "It was my intention at the sentencing to request of the

---

[3] The Court also reviewed two additional letters. The first of these letters is one that Mr. Sanders received from Ms. Sarah Gannett, an Assistant Federal Defender, which was dated August 18, 2008. In this letter to Mr. Sanders, Ms. Sarah Gannett stated that "[Counsel] did not take an appeal from your resentencing because the sentence was so favorable." This letter was designated as Exhibit 4 during the July 1, 2009 hearing. See July 1, 2009 Tr. at 62.

The second of these letters is another that Mr. Sanders received from Ms. Gannett, dated September 2, 2008. In this letter, Ms. Gannett stated that she did not have any record of a notice of appeal being filed. She further stated that, in reviewing Mr. Sanders's re-sentencing transcript, she did not notice any legal errors. She then explained to Mr. Sanders that, if he had asked his prior counsel to file a notice of appeal and his prior counsel had failed to do so, he could file a motion under § 2255 for ineffective counsel, which (if Mr. Sanders prevailed) might result in another sentencing hearing, where the judge could increase or decrease his sentence, or leave it the same. This letter was designated as Exhibit 5 during the July 1, 2009 hearing. See July 1, 2009 Tr. at 62.

After reviewing these letters in the context of Mr. Sanders's § 2255 motion, the Court is satisfied that they do not change the Court's resolution of the motion.

[4] These letters are analyzed here in the order they were actually sent, and not in the order they were discussed at the July 1, 2009 hearing.

5

Court for a sentence of 92 months; I have no legal argument to make concerning this request, I am asking your Honor to please consider my appeal to the Court's mercy. . . . During sentencing your Honor asked does anyone have any legal argument to the sentence, but I didn't speak because my request wasn't of a legal nature. But I humbly appeal to your Honor now, a sentence of 92 months, I believe, would serve justice . . . I also appeal to your Honor to please consider at my age of 50 . . . I humbly request that your Honor consider my appeal to the Court . . . Your Honor I pray [and] hope that the Court considers my appeal with an open mind and heart." July 1, 2009 Tr. at 55. The Court received and forwarded this letter to counsel on June 6, 2008, along with a separate transmittal letter. Both the Court's transmittal letter and Mr. Sanders's original letter were designated as Exhibit 1 during the July 1, 2009 hearing. See July 1, 2009 Tr. at 62.[5]

Although the word "appeal" was used in Mr. Sanders's May 31, 2008 letter to the Court, nowhere did Mr. Sanders ask the Court to see to the filing of a notice of appeal to the Third Circuit Court of Appeals, or to any other court. Rather, Mr. Sanders simply "appealed," i.e. hoped to make a persuasive pitch to "the Court" -- that is, to this sentencing court -- in an effort to receive a lower sentence.

The next piece of correspondence was a letter sent by Mr. Sanders to his counsel, dated June 9, 2008. In this letter, Mr. Sanders thanked counsel for his representation and wrote that he was "not satisfied at all with the new sentence." He further stated, "I have written to Judge Pratter and made a direct appeal to her concerning my concerns about the sentencing. And I have requested humbly of the Court to change my sentence to 92 months within the ten day

---

[5] In this transmittal letter, the Court informed counsel that "Mr. Sanders may be laboring under some misunderstanding as to the correct forum for an 'appeal.'" The Court's transmittal letter further stated that "[i]n any event, I trust that Mr. Cooper will follow up with Mr. Sanders as appropriate."

6

period allowed. I'm not sure if you have received my messages I left on your answering service, I really wanted to speak to you before I wrote the Court. . . . I'm not sure of the procedures involved for you to handle my concerns but I'm looking forward to hear [sic] from you concerning my request to Judge Pratter and I would appreciate your assistance and further council [sic] with this matter." This letter was designated as Exhibit 2 during the July 1, 2009 hearing. See July 1, 2009 Tr. at 62. See also July 1, 2009 Tr. at 18-19, 55.

Mr. Sanders's June 9, 2008 letter does not state that Mr. Sanders wished to appeal his sentence to the Third Circuit Court of Appeals, but only makes it clear that he previously sent a letter to this Court "appealing" his sentence and asking for a lower one. Read in context, Mr. Sanders's June 9 letter to counsel suggests that any voicemail messages left for counsel were likely along the same lines - telling counsel that he wanted to appeal to the sentencing judge to alter his sentence, rather than directing counsel to file an appeal with the Third Circuit Court of Appeals.

The third piece of correspondence was a letter sent by Mr. Sanders to counsel, dated July 5, 2008. In this letter, Mr. Sanders stated, "I am also asking of you to please respond to my last letter to you. My concerns about what must be done, if anything at all, to have Judge Pratter give me the eight months I have asked her for as relief in my sentencing and whether the letter I wrote her would be sufficient grounds for appeal issue within the ten day limit." This letter was designated as Exhibit 3 during the July 1, 2009 hearing. See July 1, 2009 Tr. at 62. See also July 1, 2009 Tr. at 23-24. Like Mr. Sanders's other correspondence, the July 5 letter did not request that counsel file a direct appeal with the Third Circuit Court of Appeals, but only asked

7

counsel about this Court's own ability or willingness to alter his sentence.[6]

At the July 1, 2009 hearing, counsel testified that he did not recall receiving Mr. Sanders's voicemails. See also July 1, 2009 Tr. at 40-41. He explained that in his estimation, the communications that he received from Mr. Sanders only included a request for the sentencing judge to reconsider the sentence she imposed, and not a direct appeal of the re-sentencing proceeding. See id. at 38-41. Further, counsel stated his understanding that there was no legal ground to request this Court to change Mr. Sanders's sentence to the preferred 92 months, and that the method Mr. Sanders was asking him to use to get him a lower sentence was not a method that could be used under the Rules of Criminal Procedure. See also July 1, 2009 Tr. at 38, 40.

Based on a careful review of all the correspondence mentioned above, as well as the transcripts from the July 1, 2009 evidentiary hearing and the May 28, 2008 re-sentencing hearing, the Court determines that Mr. Sanders did not unambiguously direct or ask counsel to file a notice of appeal to the Third Circuit Court of Appeals regarding his 100-month resentence. Mr. Sanders may have attempted to "appeal" to this Court in order to persuade the sentencing judge to reconsider the sentence, and he may have asked counsel to do the same; however, this is not the same thing as asking counsel to file a notice of appeal with the Third Circuit Court of Appeals. See July 1, 2009 Tr. at 59-60 (the Court noted differences between "appealing" to a sentencing judge to reconsider a sentence, and filing a notice of "appeal" with the Third Circuit Court of Appeals).

---

[6] At the July 1, 2009 hearing, Mr. Sanders acknowledged that in his July 5 letter, he was asking his counsel whether the letter he sent to the Court on May 31 "was enough to trigger something within that ten day period," and "was good enough to be [his] notice of appeal," and stated that he was "reaching at straws there." See also July 1, 2009 Tr. at 24.

The Court is satisfied that counsel represented Mr. Sanders competently and effectively at all stages of the proceedings, and that if Mr. Sanders had actually asked counsel to file a notice of appeal to the Third Circuit Court of Appeals, counsel would have done so. See July 1, 2009 Tr. at 46-47.[7] Viewing all of the evidence in context, the Court does not conclude that counsel "dropped the ball" or otherwise provided ineffective assistance to Mr. Sanders under the applicable caselaw.

Moreover, even if counsel had been remiss in some way or not been intuitive enough to understand Mr. Sanders's desires as including another appeal to the Court of Appeals, it does not appear that Mr. Sanders was, or could have been, prejudiced in any way or that "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In his correspondence and again at the July 1, 2009 hearing, Mr. Sanders acknowledged that he did not have a legal or factual argument to make concerning his request for a lower sentence, and that he never told counsel that he had such an argument as to why the Court's calculation of the guidelines or imposition of the particular sentence might be contrary to law or unreasonable. See July 1, 2009 Tr. at 26-27. He explained,

> I felt as though that – I mean, this is my time that we're talking about. I mean, you know, and I just felt as though well, why I couldn't have the ninety-two months instead of a hundred months. That was just my feelings. That was – that's why I made the appeal. That was my whole purpose for making the appeal. I just couldn't understand it or see it, why the Court felt as though I had a hundred months when I could have had the lower end of it, too.

See July 1, 2009 Tr. at 27. Later in the hearing, Mr. Sanders explained further:

---

[7] Counsel has been an attorney for 19 years, and for all of those years he has served as a public defender representing clients who need appointed counsel. He estimates that he has served thousands of clients, and is well aware of his obligations as defense counsel to pursue avenues that his clients request, sometimes even if he thinks those pursuits do not have substantive merit. See July 1, 2009 Tr. at 46-47.

9

> Q: Let's talk about the letter you sent then. You said, "I have no legal argument to make concerning this request." Correct?
> A: That's this request now.
> Q: Yes.
> A: No, I don't because that's exactly the last thing Judge Pratter said at that hearing. Does anybody have any legal grounds to rebuttal [sic] this re-sentencing? I did not have a legal ground –
> Q: And –
> A: – at that time.
> Q: And you still don't?
> A: Maybe I don't.[8]

July 1, 2009 Tr. at 31.

Mr. Sanders's failure to provide a legal ground to challenge his sentence is understandable, as neither his own counsel nor the Court can identify any ground on which Mr. Sanders could have appealed his re-sentence to the Third Circuit Court of Appeals with any reasonable expectations of success. Accordingly, Mr. Sanders's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 is denied, and the Court shall not issue a certificate of appealability.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[8] Mr. Sanders then set forth a possible "ground" to file an appeal to the Third Circuit Court of Appeals:

> Q: And –
> Q: Maybe I don't but I'm still here asking. Well, yes, I do have a ground. I asked this man to appeal and he did not appeal. That's my legal ground.

July 1, 2009 Tr. at 31. For the reasons discussed in this Memorandum, Mr. Sanders's request to counsel "to appeal" did not form a basis for him to receive any relief, either in this Court or in the Third Circuit Court of Appeals.